IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 17-134-BLG-DLC |
| Plaintiff/Respondent, | |
| vs. | ORDER |
| ROBERT CHARLES SCOTT, | |
| Defendant/Movant. | |

On January 25, 2018, Defendant/Movant Scott pled guilty to being a felon in possession of a firearm. On May 19, 2018, he was sentenced to serve 60 months in prison, to be followed by three years' supervised release. Less than a year later, on February 11, 2019, he moved to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255(f)(1).

On December 9, 2019, counsel filed an amended motion (Doc. 61). The amended motion "entirely supersede[s]" Scott's original motion, filed *pro se*. *See* Order (Doc. 50) at 2 ¶ 3.

Scott makes two claims for relief. First, he alleges that he "told counsel that I wished to appeal. Counsel advised that he would file an appeal on my behalf, however counsel refused and/or failed to do so." *See* Am. § 2255 Mot. (Doc. 61) at 7, 7–9 (quoting Mot. § 2255 (Doc. 48) at 3). Second, Scott alleges that trial

1

counsel provided ineffective assistance in the plea bargaining phase of the case. *See id.* at 9–10.

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) ("*Nicolas*") (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

Scott's second claim fails to state a viable ground for relief. He alleges that, due to a significant breakdown in communication between himself and counsel, he was unable to make an informed decision about the plea agreement. He does not allege that he would have done anything differently if he had been better informed. Instead, he argues that his claim is subject neither to harmless error analysis nor the usual requirement, under *Strickland v. Washington*, 466 U.S. 668, 694 (1984), that

he must show a reasonable probability of a more favorable outcome had counsel performed reasonably. He cites *United States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006). *See* Am. § 2255 Mot. (Doc. 61) at 10.

The Supreme Court's opinion in *Gonzalez* leads to the conclusion that *Strickland* applies to Scott's claim. The question in that case was "whether a trial court's erroneous deprivation of a criminal defendant's choice of counsel entitles him to a reversal of his conviction." *Gonzalez*, 548 U.S. at 142. The Eighth Circuit held it did. The United States petitioned for *certiorari*, arguing that Gonzalez must show his "counsel of choice would have pursued a different strategy that would have created a 'reasonable probability that . . . the result of the proceedings would have been different.'" *Id.* at 144–45 (quoting *Strickland*, 466 U.S. at 694) (ellipsis in *Gonzalez*).

Affirming the Eighth Circuit, the Supreme Court emphasized that Gonzalez did not claim he was deprived of his Sixth Amendment right to *effective* counsel. That right, the Court said, derived "from the purpose of ensuring a fair trial." Counsel "cannot be 'ineffective' unless his mistakes have harmed the defense (or, at least, it is reasonably likely that they have)." *Gonzalez*, 548 U.S. at 146–47.

Gonzalez claimed he was deprived of his Sixth Amendment right to counsel of his choice, a right that "has never been derived from the Sixth Amendment's purpose of ensuring a fair trial." *Gonzalez*, 548 U.S. at 147. That aspect of the

3

Sixth Amendment right to counsel, the Court explained, "commands, not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146. Gonzalez had only to show he was wrongly denied counsel of his choice, and the Sixth Amendment violation was established. "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of the representation he received." *Id.* at 148.

Unlike Gonzalez, Scott does not claim he was deprived of counsel of his choice. He claims he was deprived of effective counsel. "[T]the requirement of showing prejudice in ineffectiveness claims stems from the very definition of the right at issue; it is not a matter of showing that the violation was harmless, but of showing that a violation of the right to effective representation *occurred.*" *Id.* at 150 (emphasis in *Gonzalez*). In other words, Scott cannot state a claim for violation of the Sixth Amendment right to effective counsel unless he shows a reasonable probability that, but for counsel's performance, one of two things would have happened: either he would have achieved a more favorable plea bargain, or he would have chosen to stand trial.

Relying on language from *Gonzalez*, Scott argues that he cannot be expected to make this showing, because "[m]any counseled decisions, including those involving plea bargains . . . do not even concern the conduct of the trial at all," so

4

that "[h]armless-error analysis . . . would be a speculative inquiry into what might have occurred in an alternate universe." Am. § 2255 Mot. (Doc. 61) at 10 (quoting *Gonzalez*, 548 U.S. at 150) (ellipses added). But the *Gonzalez* Court did not use the phrase "alternate universe" lightly. Its point was that depriving a defendant of counsel of his choice alters *every single thing* about a case:

> Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the framework within which the trial proceeds—or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all. Harmless-error analysis in such a context would be a speculative inquiry into what might have occurred in an alternate universe.

*Gonzalez*, 548 U.S. at 150 (internal quotation marks and citation omitted).

By contrast, under *Strickland*, "if and when counsel's ineffectiveness 'pervades' a trial, it does so (to the extent we can detect it) through identifiable mistakes. We can assess how those mistakes affected the outcome." *Gonzalez*, 548 U.S. at 150–51. *See also Hill v. Lockhart*, 474 U.S. 52, 59–60 (1985) (applying *Strickland* to claim of ineffective assistance in plea bargaining and affirming denial for lack of prejudice).

5

Here, to the extent counsel's "inability to effectively communicate with his client means that Scott did not understand the plea agreement and did not intelligently plead guilty," Am. § 2255 Mot. at 10, Scott can and must allege facts showing how effective communication with his counsel would have led to a different and better plea agreement or would have led Scott to choose trial over a guilty plea.

Scott will have an opportunity to supplement his second claim by pleading facts supporting an inference that he was prejudiced by counsel's performance. Alternatively, he may withdraw the claim.

Accordingly, IT IS ORDERED that Scott must respond to this Order on or before **January 6, 2020.**

DATED this 12th day of December, 2019.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court