IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 17-134-BLG-DLC |
| | CV 19-015-BLG-DLC |
| Plaintiff/Respondent, | |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE |
| | OF APPEALABILITY |
| ROBERT CHARLES SCOTT, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Robert Charles

Scott's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. §

2255.  Scott is a federal prisoner proceeding with appointed counsel.

At the outset of the evidentiary hearing on June 30, 2022, the Court noted

that it had ordered the United States to respond to one of Scott's claims but did not

require it to file a formal answer.  The Court stated it would presume the United

States generally denied Scott's allegations.  No one objected to proceeding on that

basis.  No additional pleading or briefing is necessary.

## I.  Procedural Background

Scott filed his § 2255 motion (Doc. 48) on February 11, 2019.  On August

16, 2019, the Court found the interests of justice supported appointing counsel to

represent him.  *See* Order (Doc. 50); 18 U.S.C. § 3006A(a)(2)(B).  Counsel filed an

1

amended motion on December 9, 2019 (Doc. 61).  The amended motion superseded Scott's *pro se* motion.  *See* Order (Doc. 50) at 2 ¶ 3.

After various delays related to Scott's dissatisfaction with that attorney, *see* Order (Doc. 85) at 5–6, counsel was permitted to withdraw on July 29, 2020, *see* Order (Doc. 76), and Scott was required to clarify his claims, *see* Order (Doc. 79).

In May 2021, the Court denied one claim, *see* Order (Doc. 85) at 6–11, and required the United States to respond to the other, *see id*. at 11–15.  The United States was given a choice between submitting evidence or simply conceding the issue and allowing Scott to take an appeal.  *See id*. at 15–16 (citing *United States v. Sandoval-Lopez*, 409 F.3d 1193 (9th Cir. 2005)).  Scott was permitted but not required to reply.  *See* Order (Doc. 85) at 17 ¶ 3; *see also* Rule 5(d), Rules Governing § 2255 Proceedings.  This Order apparently was successfully delivered to Scott's mailing address of record, as it was not returned to the clerk.

About two weeks later, on May 27, 2021, the United States Probation Office filed a petition alleging that Scott had violated several conditions of his supervised release.  *See* Pet. (Doc. 86).  Scott was arrested on June 7, 2021.

The United States responded to the § 2255 motion on June 14, 2021, opting to contest Scott's allegations.  *See* U.S. Resp. and Exs. (Docs. 98, 99); *see also* Protective Order (Doc. 100).  On the same day, the Court deferred the final revocation hearing to September, and Scott was released from custody.  *See*

Minutes (Doc. 96); Order (Doc. 97).

More than once, the United States attempted to serve its response to the §

2255 motion on Scott, only to have its mail returned as undeliverable.  *See* Notice

(Doc. 104) at 1–2.  The clerk's mail to Scott was also returned as undeliverable.

*See* Docket Entries (Docs. 102, 103).  On July 9, 2021, the United States filed

notice that it had delivered its response to Scott's probation officer.  *See* Notice

(Doc. 104).  Scott still did not reply or file anything on his own behalf.

On September 13, 2021, the United States Probation Office submitted an

amended petition for a warrant or summons.  Scott was arrested on September 16.

On September 22, 2021, he admitted some of the alleged violations.  His

supervised release was revoked, and he was sentenced to serve eight months in

custody, followed by 28 months' supervised release.  *See* Am. Pet. (Doc. 106);

Warrant Return (Doc. 116); Revocation Judgment (Doc. 114).

On January 11, 2022, the Court ordered Scott to state whether he intended to

proceed with his motion under 28 U.S.C. § 2255.  Additional copies of the United

States' response to the motion, including counsel's affidavit, were included with

Scott's service copy of the Order.  *See* Order (Doc. 117) at 2 ¶ 2; Doc. 117 Docket

Entry.

The clerk sent the order to Scott's last known mailing address of record.  It

was returned as undeliverable on January 31, 2022.  *See* Order (Doc. 117);

Returned Mail (Doc. 118).  Finally, after a diligent search by the clerk, Scott was located at the Yellowstone County Detention Center.  The clerk remailed the order to him.

On February 16, 2022, Scott responded that he intended to proceed with the action and "firmly stands on all previous claims."  Resp. to Order (Doc. 119).  All previous claims, except the one alleging that trial counsel failed to file a notice of appeal as instructed, have been denied.  *See* Order (Doc. 85).

On February 25, 2022, the Court ordered new counsel to be appointed for Scott and set an evidentiary hearing for June 30.  Following the hearing, the Court is prepared to rule.

## II.  Scott's Remaining Claim

Scott pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  On May 10, 2018, he was sentenced to serve 60 months in prison and three years' supervised release.

Scott's remaining claim alleges that trial counsel Mark Werner:

asked me if I wished to appeal, after being advised that I may do so, by the Chief District Judge.  I told counsel that I wished to appeal. Counsel advised that he would file an appeal on my behalf, however counsel refused and/or failed to do so.  Defense counsel never filed my appeal.

Am. § 2255 Mot. (Doc. 61) at 7 (quoting Mot. § 2255 (Doc. 48) at 3 ¶ 11(d)).

At the point of appeal, counsel has two constitutional duties: a conditional

4

duty to consult with the client about appeal, and an unconditional duty to file a notice of appeal if instructed to do so, even if the defendant waived appeal, and even if counsel believes an appeal is frivolous. *See Garza v. Idaho*, __ U.S. __, 139 S. Ct. 738, 747 (2019); *Roe v. Flores-Ortega*, 528 U.S. 470, 477–80 (2000).

Counsel has a duty to consult with the defendant about appeal if he knows the defendant is interested in appeal or if he believes an appeal might be warranted. Scott does not allege that counsel failed to consult; he says they consulted. His claim concerns the unconditional duty: Werner disregarded Scott's specific instruction to appeal.

### III.  Relevant Facts

Scott has the burden of proving facts supporting his claim by a preponderance of the evidence. *See, e.g.*, *United States v. Dharni*, 757 F.3d 1002, 1004 (9th Cir. 2014) (citing *Varghese v. Uribe*, 736 F.3d 817, 823 (9th Cir. 2013)); *McKinney v. United States*, 487 F.2d 948, 949 (9th Cir. 1973). The hearing and the parties' expansion of the record before the hearing show the following evidence.

At the close of the sentencing hearing on May 10, 2018, pursuant to Federal Rule of Criminal Procedure 32(j)(1), the Court gave Scott "Advice of a Right to Appeal":

| The Court: | Mr. Werner, I believe that Mr. Scott has waived his right of appeal; is that correct? |
|---|---|
| Mr. Werner: | That's correct, Your Honor. |

5

The Court:      Mr. Scott you have waived your right of appeal, but if you think I've done something wrong here this morning and you wish to attempt to appeal, you will have 14 days from the date of entry of judgment in which to appeal.  Judgment will be entered today, so that means you would have 14 days from today in which to appeal.  Do you understand that, sir?

Mr. Scott:      Yes, Your Honor.

The Court:      All right.
                        Mr. Baucus, any legal objections to this sentence?

Mr. Baucus:    None, Your Honor.

The Court:      Any legal objections, Mr. Werner?

Mr. Werner:    No, Your Honor.

The Court:      All right.
                        Mr. Scott, I'm going to remand you back to the custody of the U.S. Marshals Service at this time to carry out the judgment of the Court, and we'll be in recess.
                        Thank you.

Mr. Scott:      Yes, sir.

(Proceedings were concluded at 11:31:36.)

Sentencing Tr. (Doc. 60) at 36:14–37:11.[1]  These are the last lines of the transcript.

At the evidentiary hearing, Scott testified that he had a whispered

---

[1]  This advisement was required under Rule 32(j)(1) and did not vitiate the waiver in the plea agreement.  *See United States v. Arias-Espinosa*, 704 F.3d 616, 618–20 (9th Cir. 2012).

conversation at the podium with Werner after the Court advised him of his right to appeal and while the Court was still speaking.  Werner asked him if he wanted to appeal, and Scott said he did.  Scott testified that the hearing ended shortly after their conversation.

Scott also testified that, after his sentencing hearing, he had more than one conversation with Werner, by phone and in person at Shelby, Montana, where Scott was held prior to being transferred to a federal prison.  They did not discuss an appeal because, as Scott explained at the hearing, he had already told Werner he wanted to appeal and believed the process was underway.  Instead, Scott testified, they discussed defenses that should have been raised before Scott pled guilty.

Counsel Werner testified that he did not recall either that he and Scott had a whispered conversation at the podium or that they communicated after the sentencing hearing and before Scott was transferred to prison.

Scott's final day to appeal was May 24, 2018.  *See* Fed. R. App. P. 4(b)(1)(A)(i).  No notice of appeal was filed.

On June 4, 2018, Werner and Judy Fisher, an administrative assistant, each received a letter from Scott requesting copies of the plea agreement and sentencing transcript.  In a postscript to both letters, Scott wrote, "I'm currently in the process of filing an appeal."  The date of each letter was May 29, 2018, five days after the time to appeal expired.  *See* Werner Aff. Ex. C (Doc. 99-4) at 1, Ex. D (Doc. 99-5)

at 1.[2]

The day after Scott's letter was received, June 5, 2018, Fisher wrote back to Scott.  She provided copies of the docket sheet and the plea agreement.  She added, "We did not order copies of your sentencing transcript."  Werner Aff. Ex. E (Doc. 99-6) at 1.  Werner himself did not respond to Scott's June 4 letter.

Meanwhile, on June 6, 2018, the clerk's office received a letter from Scott requesting a copy of his plea agreement and sentencing transcript "for my <u>records and appeals</u> purposes."  This third letter was also dated May 29, 2018.  *See* Letter (Doc. 45) at 1.  The clerk provided a courtesy copy of the plea agreement, advised Scott that he must order the sentencing transcript from the court reporter, and told him how to do so.  *See* Clerk Resp. (Doc. 45-1).

Federal Rule of Appellate Procedure 4(b)(4) allows the district court to extend the time to appeal for 30 days beyond the time it would otherwise expire.  Had Scott moved for and received an extension, his last day to appeal would have been Monday, June 25, 2018.

In July 2018, Scott wrote another letter to Ms. Fisher.  *See* Werner Aff. Ex. F (Doc. 99-7) at 1.  He asked why the office "didn't order my sentencing transcripts."  *Id*.  He said, "I really must reiterate that I really need my sentencing

---

[2]  Exhibits C, D, F, and G to Werner's affidavit are substantially identical to exhibits attached to Scott's amended motion.  *See* Am. § 2255 Mot. (Doc. 61-1) at 102–104, 106.  Scott's exhibits do not include Fisher's responding letter of June 5, 2018 (Werner Aff. Ex. E).

transcripts for my records and appeals purpose.  Please order my sentencing transcripts, and mail them to me as soon as conveniently possible?"  The letter, dated July 9, 2018, was stamped "received" by the Federal Defenders office on August 1, 2018.  *See id*.

On August 2, 2018, the day after receiving Scott's second letter, Werner wrote back to Scott.  He explained that he was unable to order the sentencing transcript because Defender Services budgeting guidelines only authorize payment for transcripts "for purpose of appeals matters."  Werner wrote, "As I'm sure you recall, you entered into a plea agreement . . . wherein you waived your rights to appeal.  Therefore, our office would not be permitted to order any sentencing transcripts in your case."  Werner Aff. Ex. G (Doc. 99-8) at 1.

Representing himself, Scott filed a § 2255 motion on February 11, 2019.  He did not assert a claim for counsel's failure to file a notice of appeal.  But the form asked him to explain why he did not appeal.  In response, he made the claim quoted above.  *See* Mot. § 2255 (Doc. 48) at 3.

## IV.  Findings and Conclusions

1.  <u>Scott did not direct Werner, while both were standing at the podium in the sentencing hearing, to file a notice of appeal.</u>  It is possible to read Scott's final comment, the last statement recorded at the sentencing hearing, as a response to my saying, "Thank you," or instead as a response to counsel's whispered question

whether Scott wanted to appeal. *See* Sentencing Tr. (Doc. 60) at 37:9–10. For three reasons, the Court finds that Scott's remark was not directed to counsel. First, parties are generally expected to pay attention and listen to what the Court and other parties say in open court. If Werner and Scott had been whispering to each other, they would have been asked whether they needed a moment to consult. The transcript shows no question of that nature. Second, counsel Werner testified that he does not recall either the whispered exchange or, indeed, any expression of interest by Scott in appealing. *See also* Werner Aff. (Doc. 99-1) at 2–3 ¶¶ 5–6. Third, Werner testified that he would have filed a notice of appeal if Scott had said at the sentencing hearing that he wished to appeal. Therefore, the fact that Werner did not file a notice of appeal is evidence that Scott did not instruct him to do so.

2. <u>Scott did not direct Werner, after the sentencing hearing and before writing his letters, to file a notice of appeal.</u> Scott testified that he discussed the case more than once with Werner after the sentencing hearing. Werner did not recall any such conversations. The Court finds that Scott is mistaken, and post-sentencing conversations did not occur. Scott's habeas counsel has had an opportunity to review trial counsel's file, *see* Order (Doc. 120) at 2 ¶ 4, and evidently found no indication that Werner logged time on the case after sentencing. Counsel had no reason to discuss the case with Scott after sentencing. Further, even if one or more conversations occurred, they did not include a direction by

10

Scott to Werner to file a notice of appeal, as even Scott did not recall any discussion of appeal.

3. <u>Werner had no reason to know that Scott was interested in appealing.</u>
Werner knew that Scott had waived his right to appeal in the plea agreement. Judge Cavan reviewed the appeal waiver with Scott at the change of plea hearing. *See* Change of Plea Tr. (Doc. 59) at 15:25–16:5, 18:19–19:11.  Near the end of the sentencing hearing, the Court recalled, and Werner confirmed, that Scott had waived his right to appeal.  *See* Sentencing Tr. (Doc. 60) at 36:17–24.  Werner testified that, in addition to the waiver, the downward variance from an advisory guideline range of 77 to 96 months to a sentence of 60 months was quite favorable. Scott and Werner discussed and rejected potential defenses before Scott pled guilty.  Werner did not perceive a viable issue for appeal, and Scott has not shown that he missed a viable appeal issue he should have recognized.  Finally, as no whispered conversation on this point took place at the podium, and Werner and Scott did not discuss the case after sentencing, Werner had no reason to believe that Scott personally wished to appeal.

4. <u>Counsel reasonably understood Scott's letters to indicate that Scott intended to file something on his own behalf after sentencing.</u>  On May 29, 2018, when Scott wrote letters to the Federal Defenders generally and Werner specifically, he stated in a postscript, "I'm currently in the process of <u>filing an</u>

appeal." *See* Werner Aff. Ex. C (Doc. 99-4) at 1, Ex. D (Doc. 99-5) at 1 (emphasis in originals).  As Werner testified at the hearing, he read this statement as an indication that Scott was taking some action, *pro se*, concerning his conviction or sentence.  In the Court's experience, many defendants refer to collateral review, such as motions under 28 U.S.C. § 2255, as "appeal."  Werner, as explained in the three preceding paragraphs, had no reason to believe Scott wanted to pursue a direct appeal of his conviction or sentence.  He testified that he understood he must file a notice of appeal when instructed to do so, even when he believes an appeal is unwarranted, unwise, and unavailable due to waiver.  And Werner testified that he knows Appellate Rule 4 provides a mechanism for requesting an extension of time to appeal.  The Court finds that Werner would have filed for an extension of time if he had inferred from Scott's letter that he wanted to pursue a direct appeal.  Because direct appeal was waived and Werner had no reason to think Scott should appeal or wanted to appeal, Werner reasonably interpreted Scott's letter as falling outside the scope of his representation.

5.  Having found the foregoing facts, the Court concludes that Werner did not violate his unconditional duty to file a notice of appeal when instructed to do so by the client.  Scott's claim is denied.

## V.  Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Gonzalez v. Thaler*, 565 U.S. 134, 140 (2012) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Buck v. Davis*, __ U.S. __, 137 S. Ct. 759, 773–74 (2017).

Scott's claims do not meet the relatively low threshold required to issue a COA. The record of the case, along with the additional evidence and testimony introduced on the issue, provide no factual support for his claim that he instructed counsel to file a notice of appeal or that counsel failed or refused to do so.

Scott's other claim alleged that counsel advised him to plead guilty before Scott's psychological evaluation was completed and without adequately investigating the facts of the case. The record of the case shows that counsel filed the plea agreement in order to preserve the plea bargain. If the evaluation had supported withdrawal of the guilty plea, counsel would have filed a motion to do that. *See* Order (Doc. 85) at 7–8. Scott also contended counsel wrongly advised him that he had no defense and was caught red-handed. But he failed to allege facts supporting an inference that counsel was wrong. Scott was highly likely to be

convicted of being a felon in possession of a firearm because he was seen in possession of a firearm and he was a felon.  He has not claimed that he was unaware he had been convicted of a felony at the time he possessed the firearm.  *See id*. at 8–10.  Scott's other, piecemeal allegations in connection with this claim were not supported by either law or fact.  *See id*. at 10–11.

The Court does not believe reasonable jurists would find room to debate these issues.  There is no reason to encourage further proceedings.  A COA is not warranted.

Accordingly, IT IS ORDERED:

1.  Scott's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Doc. 61) is DENIED.

2.  A certificate of appealability is DENIED.  The Clerk of Court shall immediately process the appeal if Scott files a Notice of Appeal.

3.  The Clerk of Court shall ensure that all pending motions in this case and in CV 19-17-BLG-DLC are terminated and shall close the civil file by entering judgment in favor of the United States and against Scott.

DATED this 14th day of July, 2022.

Dana L. Christensen, District Judge
United States District Court

14